CHARLES CARROLL, Chief Judge.
This is an appeal by the plaintiffs below from an adverse summary judgment. By their complaint as amended the plaintiffs alleged that they were wholesale and retail dealers in jewelry; that Winston Galleries, Inc. was in a similar business handling consigned jewelry; that 90% of the Winston merchandise was held on consignment from plaintiffs; that plaintiffs had “required of said Winston Galleries that it obtain coverage for its inventory as a prerequisite to the same being delivered to Winston Galleries” and that they, the plaintiffs, “as suppliers of the majority of the inventory sought to be insured, are the real beneficiaries in interest to said coverage.” It was alleged that Winston, through the defendant general insurance agent, applied for issuance of such insurance against loss including theft, by a policy known as *244 “Jewelers Block Insurance,” which is made for the benefit of the consignors as well as for the consignee, and which gives to the consignors a right of direct recovery for loss sustained thereunder; that a contract to obtain such coverage was made between Winston and the defendant (through the latter’s employee Wexler) five days before Winston received the merchandise on consignment, and that Wexler knew that Winston was required to have such insurance coverage by the time it received such merchandise; that the insurance was not obtained, and that two weeks later the merchandise (having been received by Winston) was stolen, whereby plaintiff Leonard Taylor Jewelers, Inc. suffered loss amounting to $35,000 and the plaintiff Lihn & Company sustained a loss amounting to $64,897.50. The plaintiffs charged the defendant insurance agent with breach of duty to obtain the insurance as contracted for. Depositions of Bernard Winston, president of Winston Galleries, Inc., and of the defendant’s employee Wex-ler were taken, and the defendant moved for summary judgment.
The determinative question here, as in the court below, was whether the evidence relied on by the defendant disclosed a contract for the insurance or binder therefor upon which recovery could be had, or showed an arrangement amounting only to a request for insurance if obtainable which fell short of a contract to obtain or supply such insurance. The trial court concluded that the latter was disclosed, and on reviewing the record we hold that such ruling was eminently correct.
The oral arrangement between Winston and Wexler was made on November 28 1967, at which time Winston paid to Wex-ler a $500 advance on premium. The jewelry was acquired by Winston on consignment (on the assumption of insurance coverage) on or about December 3, 1967, and the loss occurred on December 12. At the time of the oral arrangement, Winston filled out an application for insurance, and Wexler gave Winston a receipt, written on the Winston letterhead, which contained certain statements of the arrangement as follows:
“November 28, 1967
“Received from the above $500.00 down payment on Jewelers Block Policy to be issued Lloyd’s of London. This payment constitutes a definite order on the part of the above.
“This payment does not serve as a binder of coverage but will apply towards a down payment should a policy be issued.
“If a policy is not issued check for $500 — will be refunded in full.
“M. J. Wexler”
Consistent with the language of that receipt, Wexler testified that one may not “order” such an insurance policy from Lloyd’s of London; that an insurance proposal is submitted, and if Lloyd’s is willing to issue a policy as requested it will quote a price for the premium, and upon being advised that the quoted premium is satisfactory, may then issue the policy; that in this instance the matter was submitted to Lloyd’s and it was not until a few hours before the actual loss that Lloyd’s responded with a quoted premium and the information that if the premium was satisfactory the insurance could be obtained.
Contrary to plaintiffs’ allegations that Winston made a contract with the defendant for such insurance, the testimony of Bernard Winston shows that Winston was aware that the insurance would not be effective until or unless issued by Lloyd’s.[1]
*245 The appellants having failed to demonstrate error, the summary judgment appealed from should be and hereby is affirmed.

. The deposition of Bernard Winston contained the following questions and answers : “Q Sir, you were aware, were you not, that this insurance was not to be effective until a policy might be issued by Lloyd’s of London and that until Lloyd’s decided to issue any such policy there would be no insurance; is that right? A Mr. Wexler said words to that effect. I can’t recall the exact words. * * * Q Mr. Wexler told you, did he not, sir, that he had no authority to bind *245 Lloyd’s? A Well, that’s right, that is one thing he did tell me, yes. Q And that he would have to check with Lloyd’s, first of all, to see if Lloyd’s would even issue you a policy; isn’t that true? A That is true, yes. Q Were you ever advised that a policy had in fact issued? A No.”